**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:22-cr-243-002 (CKK)** |
| **v.** | : | |
| | : | |
| **COLE ANDREW TEMPLE,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Cole Andrew Temple to a sentence of 21 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.

### I.      Introduction

Defendant Cole Andrew Temple, a restaurant worker from Swanton, Ohio, participated in the January 6, 2021, attack on the United States Capitol — a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Defendant Temple pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of 21 days' incarceration is appropriate in this case because he (1)

---

[1]      The Statement of Offense in this matter, filed on October 5, 2022, (ECF No. 63 at ¶ 6) reflects a sum of more than $2.7 million dollars for repairs. As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was  $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

observed a line of police officers and bicycle racks that separated him, his mother, Jodi Wilson, and other rioters from the United States Capitol and saw rioters remove the racks and overrun the police officers; (2) stood by as Wilson tried to rally other rioters, shouting for them to join her; (3) with his mother, Wilson, and others moved a portion of a displaced bicycle rack in order to create a pathway that would allow them access to the East Front of the Capitol; (4) joined other rioters on the steps of the East Front of the Capitol and stood a few feet away from rioters who were physically clashing with U.S. Capitol Police and Metropolitan Police Department officers and forcefully trying to break into the Capitol; (5) joined the crowd of rioters that entered the Capitol at approximately 3:01 p.m. ET after they had overrun the police officers guarding the Rotunda doors; (6) went to the Rotunda and took photographs and recorded videos in both locations with his cell phone; (7) remained inside the Capitol for more than fifteen minutes until he and Wilson were forced to leave the building by riot gear-clad police officers; and (8) has not expressed remorse for his conduct on January 6.

Even if he didn't personally engage in violence or property destruction during the riot, Temple celebrated the riot and his own actions, as evidenced by videos that he shared, including one to Snapchat with a caption that read "Shits going down" [sic] and "Go ahead, say some shit," and another video in which Temple filmed himself yelling "just broke in this bitch."

The Court must also consider that Temple's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt Congressional proceedings. But for his actions alongside so many others, the riot likely would have failed to disrupt the certification proceedings.

## II.      Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 63 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Temple's conduct and behavior on January 6.

*Defendant Temple's Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Temple and his mother, Wilson, traveled together and with friends Gabriel Burress and Madison Pettit,[2] from Swanton, Ohio to Washington, D.C. to attend then President Trump's speech. On January 6, 2021, after missing the speech, Temple, Wilson, Burress and Pettit went to the U.S. Capitol Building to protest Congress' certification of the Electoral College vote.

Upon their arrival on the grounds of the U.S. Capitol Building, Temple, Wilson, Burress and Pettit assembled with others behind bicycle racks and a line of police officers intended to prevent access to the East Front of the Capitol. Temple wore a dark hooded sweatshirt, a royal blue neck gaiter, and a dark blue knit cap with the word "AMERICA" on it. Wilson wore a pink hooded sweatshirt underneath a dark or black jacket. Both are inside the red square in Exhibit 1.

---

[2] Burress and Pettit pled guilty to violating 40 U.S.C. § 5104(e)(2)(G) and were sentenced to 45 days' home detention, 18 months' probation, 60 hours of community service, and $500 restitution. *See United States v. Gabriel Burress and Madison Pettit*, 21-cr-744 (TJK).

Exhibit 1



While still behind the bicycle racks, Temple accompanied Wilson and stood directly behind

Wilson as she verbally confronted police officers near the racks. *See* Exhibit 2.

Exhibit 2



At the same time, Temple and Wilson stood by and watched as other rioters clashed with police officers. Temple appears in Exhibit 3 standing behind Wilson's left shoulder.

Exhibit 3



Temple and Wilson retreated to the middle of the crowd of rioters behind the bicycle racks, as others fought to remove the bicycle racks and physically clashed with police officers. Referring to the bicycle racks, Wilson yelled to the crowd surrounding her, "We need everybody. We can't do this by ourselves. Get your asses down here and let's fucking do this. You want to make some fuckin' noise . . . We got to do this together."[3] Minutes later, as Wilson, Temple, Burress and Pettit grabbed a portion of a displaced bicycle rack in order to remove it from obstructing their path to the Capitol, Wilson yelled, "We gotta get this fucking gate out of here."[4] *See* Exhibit 4.

---

[3] Facebook - kevin.bui.754 video_5065387093501774.mp4
https://www.facebook.com/kevin.bui.754/videos/5065387093501774 Timecode: 5:40.
[4] Facebook - kevin.bui.754 video_5065387093501774.mp4
https://www.facebook.com/kevin.bui.754/videos/5065387093501774 Timecode: 7:52.

Exhibit 4



Once other rioters overcame the bicycle racks and police officers, Temple and Wilson quickly moved toward the steps of the Capitol. Exhibit 5 shows Temple and Wilson in the crowd before the bicycle racks and police line were breached and Exhibit 6 shows Temple and Wilson as they quickly moved into the restricted area and toward the steps of the East Front of the Capitol.[5]

---

[5] YouTube - AircraftSparky (UCyTN_QcD7XVHrsbSrHx5hhw) Battle of the Barriers and the Rush towards the Capital Steps https://www.youtube.com/watch?v=185f3LPxUYU&t=1.

Exhibits 5 and 6





Temple and Wilson joined other rioters on the steps on the East Front of the Capitol and stood a few feet away from rioters who were physically clashing with U.S Capitol Police and Metropolitan Police Department officers and while officers deployed a smoke bomb or tear gas to halt and deter the rioters from breaking the doors and entering into the Capitol.[6] *See* Exhibit 7.

---

[6] Odysee – vinceableworld Trump Supporters Gather At Capitol House Steps for the Next Push Forward!.mp4 Archive.org Link

Exhibit 7



At approximately 3:01 p.m., after other rioters had overrun police officers guarding the

Rotunda Doors of the Capitol, Wilson entered the Capitol through the broken Rotunda doors,

followed by Temple, Burress and Pettit. *See* Exhibit 8.

---

https://archive.org/download/DitvdKNtPaTAtEGXo/Trump_Supporters_Gather_A.mpeg4
Timecode: 4:25 and 10:50-14:30

Exhibit 8



While inside the Capitol, Temple and Wilson traveled from the Rotunda Doors foyer into the Rotunda and took photographs and recorded videos in both locations with their cell phones. Temple recorded videos and posted some or all of the videos to Snapchat. Included with at least one of the recordings, Temple imposed captions that read, "Shits going down" and "Go ahead, say some shit." Temple also filmed himself yelling, "Just broke in this bitch." *See* Exhibit 9.

Exhibit 9



Surveillance cameras inside the Capitol captured images, including Exhibits 10 - 12, of Wilson and Temple as they left the Rotunda Doors foyer and entered into the Rotunda at approximately 3:02 p.m.

Exhibit 10 - 12







Exhibit 13 shows Temple and Wilson (encircled in red) inside the Capitol and Exhibit 14 shows the presence of riot gear-clad police officers as they corralled and ordered the rioters in the Rotunda, including Temple and Wilson, to leave the Capitol.

Exhibits 13 and 14





At approximately 3:17 p.m., Temple and Wilson exited the Capitol through the Rotunda Doors.

In total, Temple and Wilson spent nearly 17 minutes inside of the Capitol. Both Temple and Wilson have admitted that they knew at the time they entered the U.S. Capitol Building that they did not have permission to do so, and they paraded, demonstrated, or picketed while inside the Capitol.

*Defendant Temple's FBI Interview*

On August 12, 2021, Temple was interviewed by Federal Bureau of Investigation ("FBI") agents. He stated that he and Wilson traveled to Washington, D.C. to protest at the U.S. Capitol Building on January 6, 2021. He stated that he saw protesters pushing police barricades and moved back into the crowd behind the bicycle racks after witnessing a rioter violently push a police officer. Later, he saw police officers deploy tear gas against the protesters outside the Capitol before he and Wilson entered the Capitol Building. He stated that he and Wilson entered the Capitol with a second wave of protesters. He acknowledged that he posted photos or videos of himself to Snapchat while inside the Capitol Building. He stated that he and Wilson were forced out of the Capitol Building by police officers.

Temple claimed he held Wilson back at times on January 6 but does not regret their participation in the events of that day.

*The Charges and Plea Agreement*

On August 18, 2021, the United States charged Cole Andrew Temple and Jodi Wilson by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). ECF 1. On August 19, 2021, Temple and Wilson voluntarily surrendered to the FBI office in the Northern District of Ohio. ECF 6, 7. On July 15, 2022, Temple

and Wilson were charged in a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). ECF 53.

On October 5, 2022, pursuant to a plea agreement, Temple pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Temple agreed to pay $500 in restitution to the Architect of the Capitol.

## III.   Statutory Penalties

Temple now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. Temple must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of incarceration.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds

of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Temple's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Temple, the absence of violent or destructive acts is not a mitigating factor. Had Temple engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Temple's case is his observation of violent clashes between other rioters with police officers as he stood behind bicycle racks on the East Front of the Capitol and his awareness that the only reason he gained access to the Capitol was because the bicycle racks had been removed and police officers had been overrun by other rioters. He was also an eyewitness to Wilson's confrontation with police officers near the bicycle racks and, with her, participated in the movement of a displaced rack. Additionally, Temple admitted that when he approached the Capitol, he saw police officers deploy tear gas against the rioters outside the Capitol. Despite observing the verbal and violent confrontations that U.S. Capitol Police and Metropolitan Police Department officers faced, Temple continued to make his way toward and into the Capitol.

Moreover, this Court should assess Temple's own conduct on a spectrum. He has admitted that he knew he did not have permission to enter the Capitol Building. Once inside the Capitol, Temple celebrated the violence and his entry into the building by posting to Snapchat, "Go ahead, say some shit." He also filmed himself yelling, "Just broke in this bitch." By posting the videos to Snapchat, he clearly sponsored the content. While he did not personally participate in the verbal or physical abuse of the police officers, or damage to the Capitol, he certainly observed the abuse and damage, entered the Capitol, and celebrated these activities.

Accordingly, the nature and circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Temple's History and Characteristics

As set forth in the Presentence Investigation Report ("PSR"), Temple has no criminal history. PSR ¶¶ 23-28. He did not report an employer at the time of the instant offense, but did indicate that he has been employed as a server at a restaurant in Swanton, Ohio since March 2022. PSR ¶ 42. He has been compliant with his conditions of pre-trial release.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most

compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37). And it is important to convey to future potential rioters— especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

While Temple has admitted that he engaged in criminal conduct on January 6, his failure to appreciate the wrongfulness of his conduct at the time he entered the Capitol Building – even after witnessing not only Wilson, but other rioters clash with police officers, and also after witnessing police officers deploy what he believed to be tear gas because rioters were attempting to and ultimately did breach the Rotunda doors – suggests the need for some specific deterrence in this case.

Furthermore, Temple's words on January 6 also demonstrate the need for specific deterrence. He proudly celebrated the storming of the Capitol and, his own words, proclaiming that he "broke in." The government acknowledges that it is not aware of any additional comments posted by Temple about January 6 since that date. He may have belatedly realized that his conduct on January 6 was criminal, but his enthusiastic endorsement of the abuse of and violent altercations with police officers on that day calls for a measure of specific deterrence.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[7] This

---

[7] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases.

Court must sentence Temple based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Temple has pleaded guilty to Count Four of the Information, charging him with parading, demonstrating, or picketing inside the Capitol, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*,

---

To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the

Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his

exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, in which the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) and faced sentencing for that offense, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

1. In *United States v. Sarko,* 21-cr-591 (CKK), the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G), Sarko observed rioters making violent entry into the U.S. Capitol Building and proudly exclaimed, "We are storming the Capitol out here;" "Where are the traitors;" "Bring out Pelosi;" "We won't let you steal this country;" "We're actually breaking in right now;" and, "Fight for Trump." Like Temple, Sarko posted videos that he recorded to his Snapchat account. However, Sarko also entered into Senator Markley's office and other offices without authorization and had adult criminal convictions. This Court sentenced Sarko to 30 days' imprisonment and 36 months' probation, which sentence the Court imposed.

2. In *United States v. Janet West Buhler,* 21-cr-510 (CKK), the defendant entered and remained in a sensitive area of the Capitol, cheered as rioters physically assaulted U.S. Capitol Police officers at the East Rotunda doors. Like Temple, Buhler ignored several red flags upon approaching and entering the Capitol Building, including the sounds of flashbangs being detonated, plumes of smoke clouding the air, rioters tearing down tarp covering the northwest staircase of the Capitol Building, and shattered glass that was the result of rioters breaching the Senate Wing Doors. This Court sentenced Buhler to 30 days' incarceration followed by 36 months' probation.

Both of these cases demonstrate the need to impose periods of incarceration where a defendant has ignored obvious red flags that their presence inside the Capitol on January 6 was criminal.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.[8]

---

[8]     Numerous judges of this Court, including Your Honor,  have concluded that a sentencing court in a case involving a violation of a Class B misdemeanor under 40 U.S.C. § 5104 may impose a "split sentence" – a period of incarceration followed by a period of probation – for defendants convicted of federal petty offenses. See, e.g., 18 U.S.C. § 3561(a)(3); *United States v. Sarko*, No. 21cr591 (CKK), 2022 WL 1288435, at *1 (D.D.C. Apr. 29, 2022) (explaining why a split sentence is permissible in a petty offense case); *United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that "a split sentence is permissible under law and warranted by the circumstances of this case"); *see generally* Appellee's Brief for the United States, *United States v. Little*, No. 22-3018 (D.C.) (filed Aug. 29, 2022). Approximately nine judges of this district have authorized and imposed such split sentences pursuant to law. *But see United States v. Panayiotou*, No. 22-CR-55 (DLF), 2023 WL 417953 (D.D.C. Jan. 25, 2023) (holding that such sentences are impermissible under Section 3561(a)(3)).

     In the alternative, courts have also issued sentences under 18 U.S.C. § 3563(b)(10), which authorizes limited periods of intermittent confinement as a condition of probation. The courts have consistently found that such a sentence is permissible for up to two weeks' imprisonment served in one continuous term. *See, e.g., United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term

V.      **Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Temple to 21 days' incarceration. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    s/ Anita Eve
        Assistant United States Attorney
        PA Bar No. 45519

</div>

---

to mean a "brief period of confinement, e.g., for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation). To this end, at least four of the judges of this Court have imposed sentences under §3563(b)(10). Indeed, a sentencing court may also impose multiple intervals of imprisonment under §3563(b)(1). *See United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992); *Panayiotou*, 2023 WL 417953, at *9 ("in a case in which the government exercises its prosecutorial discretion to allow a defendant to enter a plea to a single petty misdemeanor, it can request that a court impose a sentence of intermittent confinement as a condition of probation.") (citing 18 U.S.C. § 3563(b)).

In this district, at least two judges have similarly imposed multiple terms of imprisonment, to be served intermittently, consistent with this subsection. Such sentences are particularly appealing in light of the fact that it has been nearly three years since the World Health Organization first declared the COVID-19 outbreak a global pandemic in March 2020, and over two years since the first COVID-19 vaccine was administered in the United States in December 2020, allowing detention facilities to now more safely handle the logistical and practical concerns associated with multiple stints of imprisonment.

## <u>CERTIFICATE OF SERVICE</u>

On this 28th day of March 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

<div style="text-align:right">

 /s/ Anita Eve
Assistant United States Attorney
PA Bar. No. 45519

</div>